# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

BRIAN HARRELL,

               Plaintiff,

v.

               **MEMORANDUM OF LAW & ORDER**
               Civil File No. 19-251 (MJD/ECW)

MICHAEL D. CEDERBERG,
DAVID CEDERBERG, and
BRUCE HARRELL,

               Defendants.

Francis J. Rondoni and Elizabeth C. Henry, Chestnut Cambronne PA, Counsel for Plaintiff.

Scott S. Payzant and Ryan R. Dreyer, Morrison, Sund PLLC, Counsel for Defendants.

## I.     INTRODUCTION

This matter is before the Court on Plaintiff Brian Harrell's Motion for Summary Judgment.  [Docket No. 27]  The Court heard oral argument on July 8, 2020.

The Court was hoping for a settlement in this matter to avoid a family feud; however, those efforts were unsuccessful, and the law is clear.  There is no

legal or equitable basis for the Court to intervene to alter a clear, valid insurance contract based on speculation about the insured's later changed intent. Therefore, the Court grants summary judgment for Plaintiff.

## II.     BACKGROUND

### A.     Factual Background

#### 1.     Marriage of Georgia and Michael Cederberg

Defendant Michael Cederberg married Decedent Georgia Cederberg in 1999 or 2000.  (Rondoni Decl., Ex. A, Michael Cederberg Dep. 20.)  At that time, Michael Cederberg had a son, Defendant David Cederberg, from a previous marriage, who lived in Germany.  (Id. 20.)  In approximately 2002, Michael Cederberg and Decedent had a daughter, Julia Cederberg.  (Id. 20-21.)

#### 2.     The Policy

In 2003, Decedent, then a resident of Minnesota, procured a $500,000 life insurance policy from Farmers New World Life Insurance Company ("Farmers Policy").  (Compl. ¶ 8; Ans. ¶ 1.)  Decedent met with her insurance agent, Marion Shoemaker, Jr., in Minnesota and signed the insurance application in Minnesota. (Rondoni Decl., Ex. B, Shoemaker Dep. 32, 36.)  Decedent named her brother, Plaintiff Brian Harrell, as the sole primary beneficiary and her daughter, Julia Cederberg, as the contingent beneficiary for the Farmers Policy.  (Shoemaker

2

Dep. 29-33; Compl. ¶ 9; Counterclaim ¶ 20.)  Plaintiff was Julia Cederberg's

godfather.  (M. Cederberg Aff. ¶ 3.)  Michael Cederberg was with Decedent

when she met with insurance agent Shoemaker to take out the Farmers Policy

and was aware that Decedent named Plaintiff as the primary beneficiary.

(Rondoni Decl., Ex. A, M. Cederberg Dep. 45.)

At the time Decedent designated Plaintiff as her primary beneficiary, she

"[a]bsolutely" knew what she was doing, and her mind was clear; she was not

pressured by anyone to make the decision; and she did not appear to be

intoxicated in any way.  (Rondoni Decl., Ex. B, Shoemaker Dep. 31.)  Decedent

was "very articulate, very educated, very astute in so many different ways, and

she never spoke without being completely thoughtful about what she was gonna

say." (Payzant Aff., Ex. B, Shoemaker Dep. 22.)  "She knew exactly what she

wanted."  (Id.)  Decedent did not tell Shoemaker why she wanted to buy

insurance at that time, but she did "tell [him] – like, a lot of questions we're

looking for is what's the purpose of the insurance and that was to take care of her

children."  (Id.)  Decedent told Shoemaker that she was choosing her brother as

the primary beneficiary but did not tell Shoemaker why she was choosing him

beyond saying "that she wanted to make sure her kids were taken care of and that she had it all worked out.  Or something like that."  (<u>Id.</u> 23.)

Decedent never discussed the Farmers Policy with Plaintiff, and he did not know he was the beneficiary until he was contacted by the insurance company after her death.  (Rondoni Decl., Ex. D, Brian Harrell Dep. 57.)

Decedent took care of all of the bill payments in her family, so she paid all of the premiums on the Farmers Policy out of her joint accounts with Michael Cederberg.  (M. Cederberg Aff. ¶ 4.)

### 3.      Georgia Cederberg's Conversations with Family Members

In approximately 2007, Michael and Georgia Cederberg had another daughter, G.C.  (Payzant Aff., Ex. A, M. Cederberg Dep. 21.)

Michael Cederberg got into an argument with Plaintiff's girlfriend during Thanksgiving in 2016 or 2017, and Michael Cederberg refused to apologize. After that date, Michael Cederberg and Plaintiff no longer communicated.  (M. Cederberg Dep. 40-43.)  Decedent "was very disappointed" in her husband for failing to forgive Plaintiff.  (<u>Id.</u> 43.)  Decedent continued to have a relationship with Plaintiff but was sensitive to her husband and knew that he did not get along with Plaintiff.  (<u>Id.</u> 44.)

4

In 2016, Decedent found out that she cancer.  (Rondoni Decl., Ex. A, M. Cederberg Dep. 23.)  She did not talk to her husband about life insurance policies, finances, or estate planning; the only thing she said to him was "things will be better off when she's gone."  (Id. 44.)  She also told him that she had spoken to her brother, Bruce Harrell, about helping Michael Cederberg manage his finances and life insurance proceeds because "she was worried that [Michael Cederberg] wouldn't be able to handle it."  (Id. 47, 49.)  However, there were no trusts set up, and Michael Cederberg cannot think of any reason why they were not set up.  (Id. 49.)  Bruce Harrell testified that Decedent never discussed a trust with him.  (Rondoni Decl., Ex. E, Bruce Harrell Dep. 52-53.)  Decedent never discussed changing the beneficiaries on the life insurance policies with her husband; nor was he aware of her taking any steps to attempt to do so.  (M. Cederberg Dep. 46-47.)

In 2017, Decedent told Bruce Harrell that she had two life insurance policies, worth $500,000 each, and that Michael Cederberg was the beneficiary on both policies.  (Payzant Aff., Ex. D, Bruce Harrell Dep. 49.)  Decedent talked to Bruce Harrell about being the executor of her estate, so he assumed that she had a will.  (Rondoni Decl., Ex. E, Bruce Harrell Dep. 52.)  She mentioned having the

money go into two trusts for her daughters, with Bruce Harrell as a trustee or as an executor to her will, but he told her that Michael Cederberg could handle the money if Bruce Harrell connected him with the right advisors.  However, no trust document was prepared, and Bruce Harrell surmised that she must have changed her mind.  (Id. 56.)  Decedent never talked to Bruce Harrell about changing the beneficiary designation on her life insurance policies, and he has no knowledge that she made any attempt to change the beneficiary designation on any life insurance policy.  (Id. 64.)

Decedent's step-daughter-in-law, Alicia Cederberg, opines that Decedent "made it clear that she expected all of her life insurance proceeds to benefit her husband, Michael Cederberg, as well as her daughters, Julia and [G.C.]. Although Alicia Cederberg averred in her affidavit that Decedent "specifically told [Alicia Cederberg] that she had life insurance policies with U.S. Bank and Farmers," (Payzant Aff., Ex. E, Alicia Cederberg Aff. ¶ 4), Alicia Cederberg clarified in her later deposition that Decedent did not mention the Farmers Policy currently at issue, "that was after she had passed we found out.  I do believe she had told me about U.S. Bank because that was her current employer."  (Rondoni Decl., Ex. F., A. Cederberg Dep. 54-55).

## 4.    Notes Found on Georgia Cederberg's iPhone

Georgia Cederberg died on October 1, 2018.  (A. Cederberg Aff. ¶ 2.)

Although, after procuring the Farmers Policy, she did contact and meet with her

insurance agent on other matters such as obtaining life insurance for her

husband, she never contacted her insurance agent or the insurer to express any

intent to change her beneficiary designation on the Farmers Policy.  (Rondoni

Decl., Ex. B, Shoemaker Dep. 36-37.)

After Decedent's death, Alicia Cederberg found the following notes on

Decedent's iPhone:

> Trust
> Bruce exec
> Successor?
> Update all bank accounts and properties Paid
> Amy backup for [g] if mike passes or becomes incapacitated she
> would be paid monthly minimum of $2000 month
> depending on expenses till [g] is in college or on her own
> $30k for wedding to Julia and [G]
> College/ room and Board/ books paid plus
> $500 paid per month when in college to each girl for other expenses
> $20k to each for college graduation bonus
> Finra?
> All debts under mike including collections to be negotiated on pd
> All debts under Cederberg trucking to be paid
> Up to $40k for new vehicles for mike, Julia and [G]
> $40k for David
> Remaining funds to be invested by Bruce to someone he trusts goal
> of $500k so any monthly payments are paid from
> these funds

> Payout to Bruce for managing?
> Monthly to mike of ? for current bills or current cost to live ?
> Bills paid by trust? Direct tv, Verizon, Polk Burnett, Siren tel, Netflix,
> insurance jensen Sundquist. Approx $1000
> Property taxes paid on primary residence and 40 acres by trust
> annually
> Mikes life insurance to be paid by trust farmers
> Upon mikes death all expenses paid from trust and any remaining
> funds once girls have graduated college and weddings
> to be paid out as below.
> Primary residence - put in trust? Deeded to julia?
> 40 acres put in trust?
> If mike has life insurance at that point that will be included in
> balance.
> Equally to David, Julia and [G].

(Payzant Aff., Ex. E, Alicia Cederberg Aff., Ex. A.)

After Decedent passed away, Michael Cederberg told Bruce Harrell that

Michael Cederberg was named as the beneficiary on one of Decedent's life

insurance policies and Plaintiff was named as the beneficiary on the Farmers

Policy.  (Rondoni Decl., Ex. E, Bruce Harrell Dep. 67.)  Bruce Harrell suggested

that he talk to Plaintiff to "see if [Plaintiff] would be willing to sign [the

proceeds] over somehow."  (Id. 68.)  Bruce Harrell contacted Plaintiff and told

him that Bruce Harrell thought that Plaintiff's designation as primary beneficiary

was a mistake and that Decedent had told him that both of her life insurance

policies were going to her husband and daughters.  (Id. 69.)  Bruce Harrell said:

"[I]f I were to talk to Ryan [Michael Cederberg's attorney] about putting something together to sign it over, you know, would you be okay with that."  (Id. 69-70.)  Plaintiff responded: "[Y]es, let's figure out what we need to do."  (Id. 70.)

On October 30, 2018, Michael Cederberg's attorney, Ryan Benson, contacted Plaintiff and stated that it was Benson's understanding that Plaintiff wanted to pass the Farmers Policy proceeds to Michael Cederberg for the care of Decedent's children and asked: "Would you be willing to sign an Assignment of Life Insurance Proceeds or some other form as the life insurance company may require in order to have the life insurance proceeds pass to Mike?"  (Payzant Aff., Ex. C, Brian Harrell Dep. 38; Payzant Aff., Ex. C, Brian Harrell Dep., Ex. 2.) Plaintiff did not sign an assignment and testified that he "want[ed] the policy proceeds to me according to the life insurance document."  (Brian Harrell Dep. 39.)

### B.    Procedural History

Michael Cederberg filed a lawsuit in Wisconsin state court against Farmers New World Life Insurance Company and Plaintiff alleging that Michael Cederberg is the proper beneficiary of the Farmers Policy.  (Compl. ¶¶ 11-12; Ans. ¶¶ 5-6.)  He then dismissed that lawsuit so that the matter could be litigated in federal court in Minnesota.  (Compl. ¶¶ 13-14; Ans. ¶ 7.)

On February 4, 2019, Plaintiff filed a Complaint against Michael Cederberg in this Court.  [Docket No. 1]  The Complaint alleges one count: Declaratory Judgment that Plaintiff is the sole and primary beneficiary of the $500,000 death benefit payable on the Farmers Policy.  Michael Cederberg filed three counterclaims against Brian Harrell: Count 1: Declaratory Judgment that Michael Cederberg, Julia Cederberg, G.C., and David Cederberg are the proper beneficiaries of the Farmers' Policy; Count 2: Constructive Trust seeking to impose a constructive trust on the Farmers Policy proceeds for the benefit of Michael Cederberg, Julia Cederberg, G.C., and David Cederberg; and Count 3: Breach of Contract claiming that Bruce Harrell is entitled to specific performance of a contract requiring Plaintiff to assign the Farmers Policy proceeds to Michael Cederberg.  [Docket No. 4]

On February 28, 2019, Michael Cederberg, David Cederberg, and Bruce Harrell filed a Complaint against Brian Harrell and Farmers New World Life Insurance Company in this Court.  Civil File No. 19-497 (WMW/DTS).  The Complaint alleges: Count 1: Declaratory Judgment that Michael Cederberg, David Cederberg, Julia Cederberg, and G.C. are the proper beneficiaries of the Farmers Policy; Count 2: Constructive Trust seeking to impose a constructive

trust on the Farmers Policy proceeds for the benefit of Michael Cederberg, Julia

Cederberg, G.C., and David Cederberg; and Count 3: Breach of Contract claiming

that Bruce Harrell is entitled to specific performance of a contract requiring

Plaintiff to assign the Farmers Policy proceeds to Michael Cederberg.  Farmers

New World Life Insurance Company was never served and made no appearance

in the case.

On June 21, 2019, the two cases were consolidated.  [Docket No. 14]

Brian Harrell now moves for summary judgment granting his claim for

declaratory judgment and dismissal of the claims and counterclaims against him.

## III.   DISCUSSION

### A.   Summary Judgment Standard

Summary judgment is appropriate if, viewing all facts in the light most

favorable to the non-moving party, there is no genuine dispute as to any material

fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ.

P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The party seeking

summary judgment bears the burden of showing that there is no disputed issue

of material fact.  Celotex, 477 U.S. at 323.  "A dispute is genuine if the evidence is

such that it could cause a reasonable jury to return a verdict for either party; a

fact is material if its resolution affects the outcome of the case."  Amini v. City of

11

Minneapolis, 643 F.3d 1068, 1074 (8th Cir. 2011) (citing Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 248, 252 (1986)).

### B.   Declaratory Judgment

#### 1.   Standard for Determination of a Beneficiary

Under Minnesota law[1],

> if the insured himself procured the issuance of the policy and caused
> the beneficiary to be named therein, the policy is prima facie
> evidence that the beneficiary so named is entitled to the proceeds
> thereof at the death of the insured. . . .

Christenson v. Madson, 149 N.W. 288, 289 (Minn. 1914).

"[A] change of beneficiary may properly be effected in spite of the failure

of the insured to comply with each and every policy requirement." Lemke v.

Schwarz, 286 N.W.2d 693, 695 (Minn. 1979). "[W]here an insured has clearly and

---

[1] The parties apply both Minnesota and Wisconsin law to the declaratory judgment and constructive trust claims in their briefs. At the time Georgia Cederberg procured the Farmers Policy, she was a Minnesota resident, and she procured the Farmers Policy in Minnesota through a Minnesota insurance agent. Based on the evidence in the record, Minnesota law applies. Additionally, the outcome is the same under Wisconsin law. With regard to the breach of contract claim, the parties apply Minnesota law. Plaintiff is a Minnesota resident; Bruce Harrell is an Indiana resident, and Michael Cederberg, who lives in Wisconsin, was not a party to the alleged contract. There is no assertion that the outcome would be different under any other state's law. The Court will apply Minnesota law.

unambiguously demonstrated an intent to change the beneficiary on a life insurance policy, this intent should be given effect unless prejudice to the insurer would result." <u>Id.</u> at 696.  However, "[i]f there exists any confusion as to the insured's intent or conflicting expressions of intent, then the named beneficiary should be entitled to the proceeds." <u>Id.</u>

Thus, an insured may effectuate a change of beneficiary despite the insured's failure to comply with the insurer's policy requirements if (1) "the insured intended to change the beneficiary" and (2) the insured "took affirmative action or otherwise did substantially all that he could do to demonstrate that intention without regard to whether he complied with the change-of-beneficiary provisions in the policy." <u>Brown v. Agin</u>, 109 N.W.2d 147, 151 (Minn. 1961).[2]

## 2.    Validity of Initial Designation

The parties agree that Georgia Cederberg named Plaintiff as the sole primary beneficiary of the Farmers Policy in accordance with the terms of the Policy.  Defendants make no allegation that there was any flaw in the original

---

[2] Under Wisconsin law, the Court determines "whether the insured has performed some act which unequivocally indicates an intent to change policy beneficiaries, sufficient to effect that change." <u>Empire Gen. Life Ins. Co. v. Silverman</u>, 399 N.W.2d 910, 916 (Wisc. 1987) (citing Wisc. Stat. § 632.48(1)(b)).

designation or that it should not be enforced for some reasons such as duress, fraud, or mistake at the time it was made.  The evidence is unequivocal that Decedent procured the Policy and designated Plaintiff as the beneficiary of her own free will.  The undisputed evidence is that, at the time Decedent named Plaintiff as the beneficiary, she "[a]bsolutely" knew what she was doing; she was "very articulate, very educated, very astute" and "completely thoughtful;" and she handled the finances in her family  (Payzant Aff., Ex. B, Shoemaker Dep. 22; Rondoni Decl., Ex. B, Shoemaker Dep. 31; M. Cederberg Aff. ¶ 4.)  This is prima facie evidence that Plaintiff is the beneficiary of the Farmers Policy.

### 3. Whether Georgia Cederberg Intended to Change the Beneficiary

Under Minnesota law, to prevail, Defendants would need to prove both 1) Georgia Cederberg's clear and unambiguous intent to change the beneficiary designation, without the existence of any confusion as to the insured's intent or conflicting expressions of intent, and 2) that she took affirmative action or otherwise did substantially all that she could do to demonstrate that intention without regard to whether she complied with the change-of-beneficiary provisions in the policy.  Because Defendants cannot create a genuine issue of material fact as to the second prong, Plaintiff is entitled to summary judgment.

14

Because there is no evidence to support a finding that Decedent took affirmative action or otherwise did substantially all that she could do to demonstrate her intention to change the beneficiary designation, the Court need not analyze the first prong.  However, the Court notes that, viewing all of the evidence in the light most favorable to Defendants, Defendants cannot meet the first prong.  There is no evidence indicating Decedent's  intent to change the beneficiary designation.  Not one witness testified that she mentioned anything about wanting to change the beneficiary on the Farmers Policy.  At most, she made a to-do list in her iPhone and talked to her relatives about wishes and hopes.  (See Rondoni Decl., Ex. E, Bruce Harrell Dep. 96 ("That [iPhone document] is her typical list of things she needs to do.  That's what I saw that as.").)  Viewing the evidence in the light most favorable to Defendants, there is insufficient evidence from which any factfinder could find clear and unambiguous intent to change the beneficiary designation.

**4.     Whether Georgia Cederberg Took Affirmative Action or Otherwise Did Substantially All that She Could Do to Demonstrate an Intention to Change the Beneficiary Designation**

Decedent did not take any action to change the primary beneficiary designation on the Farmers Policy.  She never contacted the insurer to attempt to

do so.  Nor is there evidence that she directed anyone else to contact the insurer

to do so[3].  She made no effort at all to change her beneficiary designation, even

though Defendants can offer no reason that she was prevented from doing so.

(See, e.g., Rondoni Decl., Ex. E, Bruce Harrell Dep. 67 (testifying that Decedent

remained competent and able to change her beneficiary until her death).)

Defendants cite to no action, effort, or legally cognizable attempt by Decedent to

do what they believe she wanted to do.  Decedent certainly did not do

"substantially all that she could do" to demonstrate her intent to change her

beneficiary.  Therefore, based on the plain language of the Policy, Plaintiff is the

beneficiary of the Policy.

    **C.**    **Constructive Trust**

---

[3] Even if the undated notes found Decedent's iPhone after her death were
admissible, they could not defeat summary judgment.  There is no evidence that
the notes were sent to anyone.  Additionally, the iPhone list does not explicitly
reference the Farmers Policy, and it does not include an instruction to change the
beneficiary of the Farmers Policy.  The list is full of ambiguities and question
marks.  As Alicia Cederberg testified, the list is "more a list of things that she was
thinking about, as opposed to a list of what she expected to have happen . . .
[b]ecause, . . . it reflects things that just never occurred, like a trust, for example."
(Rondoni Decl., Ex. F, Alicia Cederberg Dep. 69.)  Her brother, Bruce Harrell,
characterized it as "her typical list of things she needs to do."  (Rondoni Decl.,
Ex. E, Bruce Harrell Dep. 96.)

In the Constructive Trust count in their Complaint and counterclaim, Defendants assert that "Georgia intended for the Policy proceeds to benefit [Michael] Cederberg, [Julia Cederberg], and G.C., and David [Cederberg]." (Def. Compl. ¶ 65.) The Court concludes that a constructive trust is not warranted. First, as Plaintiff points out, at the time that Decedent purchased the Policy, G.C. had not been born, so it could not have been Decedent's intent at that time that the Policy proceeds benefit G.C. Second, there is no evidence in the record that Decedent ever made any comment contemplating that any proceeds would benefit David Cederberg. As explained below, the Court further concludes that a constructive trust is not warranted with regard to Michael Cederberg and Julia Cederberg.

### 1.   Elements of Constructive Trust

"When called upon to interpret state law, [the Court's] role is to follow the law as decided by that state's highest court." Halbrook v. Mallinckrodt, LLC, 888 F.3d 971, 975 (8th Cir. 2018) (citation omitted). Decisions by a state's intermediate appellate court are persuasive evidence of state law, but "they are not controlling." DeCoursey v. Am. Gen. Life Ins. Co., 822 F.3d 469, 476 (8th Cir. 2016).

Here, both the Minnesota and Wisconsin Supreme Courts have clearly held that a constructive trust is a remedy, not an independent cause of action. Under Wisconsin law, "a constructive trust is a remedy, not a cause of action: it functions as a means of repairing divided ownership interests, not as a means of determining whether they are in need of repair." Tikalsky v. Friedman, 928 N.W.2d 502, 511 (Wisc. 2019). "A constructive trust is what arises when the defendant violates an antecedent duty that will leave him unjustly enriched. It is the defendant's obligation to perform the duty that is the cause of action." Id. at 512. Similarly, under Minnesota law,

> a constructive trust is a judicially created equitable remedy imposed to prevent unjust enrichment of a person holding property under a duty to convey it or use it for a specific purpose. More specifically, we have held that whenever the legal title to property is obtained through fraud, oppression, duress, undue influence, force, crime, or similar means, or by taking improper advantage of a confidential or fiduciary relationship, a constructive trust arises in favor of the person equitably entitled to the property.

Wright v. Wright, 311 N.W.2d 484, 485 (Minn. 1981) (citations omitted).

"The elements of a cause of action to enforce a constructive trust are the existence of a fiduciary relation and the abuse by defendant of confidence and trust bestowed under it to plaintiff's harm." Wilcox v. Nelson, 35 N.W.2d 741, 744 (Minn. 1949), quoted in In re Trust Created by Lottie P. Silliman, dated Dec.

18

29, 1950, No. A11-2327, 2012 WL 3792608, at *5 (Minn. Ct. App. Sept. 4, 2012).

The movant must show "by clear and convincing evidence that the imposition of

a constructive trust is justified to prevent unjust enrichment.'"  In re Estate of

Eriksen, 337 N.W.2d 671, 674 (Minn. 1983), quoted in In re Trust Created by

Lottie P. Silliman, dated Dec. 29, 1950, 2012 WL 3792608, at *5.

> **2.      Whether a Constructive Trust Can Be Imposed Based on Mere Mistake**

As the Eighth Circuit Bankruptcy Appellate Panel has noted, despite the

language in some Minnesota Court of Appeals cases implying that wrongdoing

is not required for imposition of a constructive trust, "the Supreme Court only

imposed constructive trusts in situations where there was indeed some

wrongdoing or a breach of a fiduciary or confidential relationship, or where the

disputed property was agreed by the parties to be jointly owned despite the

title." In re Farr, 407 B.R. 343, 348 (B.A.P. 8th Cir. 2009).  The Minnesota Supreme

Court has never "actually impose[d] a constructive trust based on a mere

mistake." Id.  As the Eighth Circuit has held, "[t]o establish the right to a

constructive trust under Minnesota law, [the plaintiff] must prove [the

defendant] obtained the [asset] by fraud, by bad faith, or by other improper

means." In re MJK Clearing, Inc., 371 F.3d 397, 401 (8th Cir. 2004) (citing

Henderson v. Murray, 121 N.W. 214, 216 (Minn. 1909)).

In this case, there is no allegation of fraud or any wrongdoing by Plaintiff

with regard to his interactions with Decedent.  There is no allegation that

Decedent named Plaintiff as the beneficiary because Plaintiff had agreed that he

would transfer the proceeds to another despite the title.  Rather, Defendants

claim Decedent's failure to change the beneficiary designation on the Farmers

Policy was a mistake, and it would be morally wrong for Plaintiff to keep the

insurance proceeds as a result of that mistake.  However, Defendants' claim that

Georgia Cederberg made a mistake and must have thought that she changed the

beneficiary or that her husband or children had somehow become the

beneficiaries, does not give the Court the power to "correct" the Policy through a

constructive trust.  See, e.g., Lee v. Lake Area Bank, No. C0-00-102, 2000 WL

1376440, at *2 (Minn. Ct. App. Sept. 26, 2000) ("[The movants] have failed to

show that a mistake is sufficient to support the finding of unjust enrichment

necessary for the imposition of a constructive trust."); In re Farr, 407 B.R. at 352

(holding that Minnesota law does not provide that "a mistake is sufficient for the

imposition of a constructive trust.").

### 3.   Unjust Enrichment

Defendants' claim that Plaintiff was unjustly enriched, as a basis for the imposition of a constructive trust, also fails.

#### a)   Elements of Unjust Enrichment

The elements of an unjust enrichment claim are: (1) a benefit conferred; (2) the defendant's appreciation and knowing acceptance of the benefit; and (3) the defendant's acceptance and retention of the benefit under such circumstances that it would be inequitable for him to retain it without paying for it.

Dahl v. R.J. Reynolds Tobacco Co., 742 N.W.2d 186, 195 (Minn. Ct. App. 2007).

"[U]njust enrichment claims do not lie simply because one party benefits from the efforts or obligations of others, but instead it must be shown that a party was unjustly enriched in the sense that the term 'unjustly' could mean illegally or unlawfully."  First National Bank of St. Paul v. Ramier, 311 N.W.2d 502, 504 (Minn. 1981) (citation omitted), quoted in In re Farr, 407 B.R. at 351–52.

Defendants note that some District of Minnesota cases have stated "that unjust enrichment claims may be asserted even if the defendant did not participate in an illegal or unlawful activity, so long as it would be morally wrong for the defendant to retain the benefit generated by the failure of consideration, fraud, or mistake."  Lighthouse Mgmt. Grp., Inc. v. Deutsche Bank

<u>Tr. Co. of Americas</u>, 380 F. Supp. 3d 911, 920 (D. Minn. 2019).  <u>See also, e.g.</u>,

<u>Kranz v. Koenig</u>, 484 F. Supp. 2d 997, 1001 (D. Minn. 2007) (holding that "a

plaintiff may maintain an unjust enrichment claim against the entity who

benefits from the wrongdoing committed by another" and upholding claim

against defendant who benefitted from the fraud of another).  These cases have

held that an unjust enrichment claim will lie against an innocent third party

because retention of the property by that party, while not illegal, would be

"morally wrong."  However, those cases all involved an underlying occurrence

of fraud or wrongdoing, so that, for example, the innocent third party was

holding property belonging to the defrauded plaintiff that was the proceeds of

the fraud.  Thus, the defendants in those cases were still benefitting from fraud

or wrongdoing.

### b)   Whether Unjust Enrichment Occurred

There is no evidence of fraud, illegality, or wrongdoing by anyone in this

case.  Rather, Defendants claim that Decedent knowingly and properly

designated Plaintiff as the beneficiary but later misremembered or was mistaken.

Defendants further argue that Plaintiff unjustly enriched himself by

initially agreeing to transfer the proceeds of the Farmers Policy to Defendants

and then changing his mind and deciding to keep the proceeds for himself.

Defendants assert that Plaintiff had a duty to transfer the funds to Defendants

because Decedent purchased the Farmers Policy "to make sure her kids were

taken care of and [] she had it all worked out," (Payzant Aff., Ex. B, Shoemaker

Dep. 22-23), and put her confidence in Plaintiff to carry out her wishes.  Thus, he

had a fiduciary duty to his sister.

The Court concludes that there is no evidence to raise a genuine question

of material fact regarding breach of fiduciary duty.  "[U]nder Minnesota law a

fiduciary relationship exists when confidence is reposed on one side and there is

resulting superiority and influence on the other; and the relation and duties

involved in it need not be legal, but may be moral, social, domestic, or merely

personal."  Hope v. Klabal, 457 F.3d 784, 791 (8th Cir. 2006) (citation omitted).

> There is no presumption of a fiduciary relation between brothers,
> especially where both of them are of mature years and have had
> experience in the matters of business as to which fraud is alleged.
> The fact that such fiduciary relation existed must be affirmatively
> established by proof.  The burden of proof rests upon the party
> asserting it.

Shevlin v. Shevlin, 105 N.W. 257, 260 (Minn. 1905).  The rare case in which

Minnesota courts have found a fiduciary relationship between siblings involved

special circumstances in which one sibling was particularly vulnerable and

23

highly dependent on the other.  See, e.g., Shevlin, 105 N.W. at 260 (finding older brother owed fiduciary duty to younger brother who had suffered a head injury, was incapacitated by alcohol and mental confusion, and was dependent on older brother in his business and personal life).  There is no evidence that Decedent was vulnerable or dependent on Plaintiff.  To the contrary, all of the parties' evidence is that Decedent was highly competent, organized, knowledgeable and in charge of her own, her husband's, and her mother's finances.  In any case, there is no allegation that Decedent ever told Plaintiff that he was the beneficiary, let alone that he should hold the proceeds in trust for his nieces.  Thus, this is not a case like Knox v. Knox, 25 N.W.2d 225, 229 (Minn. 1946), in which a person in a fiduciary or confidential relationship agreed to hold property with the promise or understanding that it would be returned and then breached that promise.

In sum, there is no allegation that Decedent did anything wrong to be named as to sole beneficiary of the proceeds of the Farmers Policy, or even that he knew about the Farmers Policy.  Decedent never placed any conditions on the receipt or usage of the proceeds of the Farmers Policy, never instructed Plaintiff in any way, and did not leave him any plan at all.  Plaintiff took no steps to cause

himself to be enriched.  Nor did he benefit from anyone else's wrongdoing.  A claim for unjust enrichment cannot succeed.

### D.   Breach of Contract

With regard to Defendants' breach of contract claim, they allege: "Bruce Harrell and Brian Harrell entered into a contract whereby Brian Harrell agreed to assign the proceeds of life insurance policy to Michael Cederberg in exchange for Bruce Harrell arranging for and paying attorney Ryan Benson to draft the assignment documents."  (Def. Compl. ¶ 76.)

#### 1.   Elements of Breach of Contract

"The elements of a breach of contract claim are (1) formation of a contract, (2) performance by plaintiff of any conditions precedent to his right to demand performance by the defendant, and (3) breach of the contract by defendant." Lyon Fin. Servs., Inc. v. Ill. Paper & Copier Co., 848 N.W.2d 539, 543 (Minn. 2014) (citation omitted).

#### 2.   Formation of a Valid Contract

"The formation of a contract requires communication of a specific and definite offer, acceptance, and consideration."  Thomas B. Olson & Assocs., P.A. v. Leffert, Jay & Polglaze, P.A., 756 N.W.2d 907, 918 (Minn. Ct. App. 2008)

(citation omitted). " Formation of a contract is judged by the objective conduct of the parties rather than their subjective intent." Id.

### a) Offer and Acceptance

The only evidence of the alleged offer and acceptance is Bruce Harrell's testimony that he offered "if I were to talk to Ryan about putting something together to sign it over, you know, would you be okay with that," and Plaintiff's acceptance being "yes, let's figure out what we need to do." (Rondoni Decl., Ex. E, Bruce Harrell Dep. 69-70.)  At most, this is a promise to review a document that Michael Cederberg's lawyer would draft about signing over the proceeds.  It is not a promise to sign over the proceeds.  No reasonable interpretation of this conversation can give rise to a promise that Plaintiff would give the Farmers Policy proceeds to Michael Cederberg.  "A court cannot speculate about the intentions of the parties or the essential terms of an alleged contract." Bubble Pony, Inc. v. Facepunch Studios Ltd., No. 15-601(DSD/FLN), 2016 WL 7130910, at *2 (D. Minn. Dec. 7, 2016) (citing United States v. White, 675 F.3d 1073, 1079 (8th Cir. 2012); Commercial Assocs. Inc. v. Work Connection, Inc., 712 N.W.2d 772, 782 (Minn. Ct. App. 2006)).   Here, the offer is too vague to form the basis of an

enforceable contract.[4]  Additionally, "because the conversation is too vague to

constitute a valid offer, any representations [] could not be reasonably relied on,"

and, therefore, could not support a claim for promissory estoppel.  <u>Bubble Pony,</u>

<u>Inc.</u>, 2016 WL 7130910, at *2.

### b) Consideration

Because the alleged offer and acceptance were too vague to form a

contract, the breach of contract claim fails.  The Court further notes that no valid

contract was formed because there was a lack of consideration.  <u>See</u> <u>Franklin v.</u>

<u>Carpenter</u>, 244 N.W.2d 492, 495 (Minn. 1976) ("When there is a lack of

consideration, no valid contract is ever formed.").  "'Consideration' is an act or

forbearance that induces a contractually binding promise." <u>State v. Schouweiler</u>,

887 N.W.2d 22, 25 (Minn. 2016) (citation omitted); <u>Deli v. Hasselmo</u>, 542 N.W.2d

649, 656 (Minn. Ct. App. 1996) ("Consideration is something of value given in

return for a performance or promise of performance that is bargained for;

consideration is what distinguishes a contract from a gift.").  Consideration

---

[4]Although not necessary to the Court's decision, the Court notes that even Bruce
Harrell testified that he had "no idea if it's a contractual obligation"  (Bruce
Harrell Dep. 81) and he did not know why he was "named as a party to [this
lawsuit] other than the fact that Georgia told me the money was going to go to
Michael, and Brian is holding on to it" (<u>id.</u> 73).

means a negotiation resulting in the voluntary assumption of an
obligation by one party upon condition of an act or forbearance by
the other.  Consideration thus insures that the promise enforced as a
contract is not accidental, casual, or gratuitous, but has been uttered
intentionally as the result of some deliberation, manifested by
reciprocal bargaining or negotiation.  In this view, the requirement
of consideration is no mere technicality, historical anachronism, or
arbitrary formality.  It is an attempt to be as reasonable as we can in
deciding which promises constitute contracts.

Baehr v. Penn-O-Tex Oil Corp., 104 N.W.2d 661, 665 (Minn. 1960) (footnote

omitted).  "A promise to do something that one is already legally obligated to do

does not constitute consideration."  Deli, 542 N.W.2d at 656 (citing Tonka Tours,

Inc. v. Chadima, 372 N.W.2d 723, 728 (Minn. 1985)).

Here, there is no consideration for Plaintiff's alleged promise to transfer

the Farmers Policy proceeds to Defendants.  Defendants assert that the

consideration is that Bruce Harrell would pay the legal fees involved in

effectuating the transfer.  However, Bruce Harrell's testimony does not show a

promise to pay legal fees in exchange for transferring the proceeds.

Additionally, such a promise would not constitute consideration because it

is not a benefit to Plaintiff or a detriment to Defendants.  Ryan Benson is Michael

Cederberg's attorney.  (Rondoni Decl., Ex. F, Alicia Cederberg Dep. 52-53.)  Thus,

Plaintiff had no obligation to pay Benson's fees, so any offer that he would not

28

have to pay Benson to draft the document to benefit Michael Cederberg was not any benefit to Plaintiff.  Second, Plaintiff could have transferred the money without incurring the fees and if he did not transfer the money, he would not incur any legal fees for Benson drafting an assignment.  Bruce Harrell's offer to have Michael Cederberg's lawyer draft a document to facilitate Plaintiff's transfer of the proceeds to Michael Cederberg was not a benefit to Plaintiff or a detriment to Bruce Harrell, but rather was an attempt to facilitate a gift.

### 3.    Breach

The Court has found that no valid contract existed.  Even if a contract had been created, the contract was an agreement that Bruce Harrell would "talk to [attorney] Ryan about putting something together."  (Bruce Harrell Dep. 69-70.) At most, the agreement was that Michael Cederberg's attorney would draft a document and Plaintiff would review it, not that he would transfer $500,000. Thus, even if a contract had been formed, Defendants could not show breach.

Accordingly, based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED**:

1. Plaintiff Brian Harrell's Motion for Summary Judgment [Docket No. 27] is **GRANTED**.

29

2.  Plaintiff Brian Harrell is declared to be the rightful beneficiary of the $500,000 death benefit payable on the Farmers New World Life Insurance Company life insurance policy insuring the life of Georgia Cederberg that named him the primary beneficiary.

3.  The Complaint and Counterclaims of Michael D. Cederberg, David Cederberg and Bruce Harrell are hereby **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:   September 9, 2020                    s/ Michael J. Davis
                                             Michael J. Davis
                                             United States District Court